**People of the State of Illinois, Plaintiff-Appellee, v. Cecil Martin and Lawrence Williams, Defendants-Appellants.**

Gen. Nos. 51,690, 51,693.

First District, Third Division.

May 16, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman, Frederick F. Cohn, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Defendants appeal from convictions of robbery. They were tried at a bench trial along with Donald Lee. Martin was sentenced to a term of three to ten years in the penitentiary and Williams was sentenced to one to two years in the penitentiary.

The issue on appeal is whether the identification of Martin and Williams by the complaining witness was sufficient to support a finding of guilty beyond a reasonable doubt.

Alexander Hubbard, the complaining witness, testified that on September 16, 1965, at approximately 1:50 a. m. three men hailed and entered his cab at the corner of 48th Street and South Parkway. He had never before seen the three men. The cab was then under the corner lights and, as the rear door was opened, the interior light of the cab went on. Hubbard was directed to drive

458

north to 44th Street and then turn off toward St. Lawrence Avenue. As he turned south on St. Lawrence he was told to stop the car, "this is a stick-up." All three passengers had butcher knives. The cab was in motion as the man identified by Hubbard as Martin got money out of the driver's pocket and took the money changer. The man identified as Williams was holding Hubbard and cut him on the chest and hand. Hubbard was then ordered out of the cab and told to walk south on St. Lawrence. The assailants escaped through an alley. When the police arrived a few minutes later Hubbard gave his description of the men. He testified that he said Williams had on a brown jacket and a brown hat and that he was about Hubbard's height, five seven or eight. Martin had on a red and white sweater. At the trial Hubbard said that all three men were clean-shaven the night of the robbery. Later in the morning of the robbery, he returned to the scene of the robbery and discovered a knife similar to the one which injured him. The knife was not introduced into evidence.

On October 21, 1965, Hubbard approached two police officers at 47th and Vincennes and said he had just seen the three men who had robbed him. He testified that between the dates of the robbery and the arrest he had seen two of the defendants individually on the street but did not then go to the police because he wanted to get all three together.

Hubbard testified that he wore his glasses all the time, but on cross-examination stated that he wore them mostly to read.

Defendants testified in their own behalf and all three denied taking part in the robbery. Martin said he was unable to remember where he was on September 15th, but that he only saw the other two defendants once in September and that was on September 8th, his birthday.

459

He also said he had had a stroke in July, 1965, which left his right hand somewhat incapacitated in that if he wrote he had "to do it by going through a whole lot of motions."

Williams testified that he was at his sister's house from 3 or 4 p. m. on September 15th until 9 or 10 a. m. on the 16th. He said he was over there often to watch television and occasionally stayed overnight if his sister requested him to. Clodies Slaughter, sister of Williams, testified that he came to her house and stayed overnight. She recalled the particular date because her television had been repaired and was returned to her that day. That evening they stayed up to watch the late movie which went off about 1:30 or 2 a. m. A repair ticket with a "date promised" of September 15, 1965, was introduced into evidence.

Lee testified that he was at home, which alibi was corroborated by his sister and mother.

■ Defendants Martin and Williams contend that the discrepancies in the complaining witness' testimony and identification of defendants raise a reasonable doubt as to their guilt. It is well known that positive identification by one credible witness is sufficient to sustain a conviction. (People v. Hunter, 23 Ill2d 177, 177 NE2d 138; People v. Brown, 16 Ill2d 482, 158 NE2d 579; People v. Robbins, 88 Ill App2d 447, 232 NE2d 302.) However, the conviction cannot stand if the identification is vague, doubtful and uncertain. (People v. Cullotta, 32 Ill2d 502, 207 NE2d 444; People v. Ikerd, 26 Ill2d 573, 188 NE2d 12.) The court in the Cullotta case said at page 504:

"... where, as here, the identifying witnesses have never before observed the accused, the attendant circumstances, including the opportunity for definite identification, must be carefully weighed and considered."

460

The robbery took place about 1:50 a. m. Three men entered the cab at a well-lighted corner while there was an interior cab light on. As the door was closed the light was turned off. At that time the driver had no notion of any trouble. From that time to the completion of the robbery the interior lights of the cab were out. The driver was finally told to get out of the cab and not to look back.

That same night he described Williams as about his own height, 5′ 7″ or 8″. The record shows that Williams is 6′ 4″. In People v. Marshall, 74 Ill App2d 483, 221 NE 2d 133, this court reversed a conviction based on the complaining witness' identification of the defendant. The witness described the man who robbed him to police as 5′ 10″ or 11″ and the defendant was only 5′ 6″. The court said on page 484:

> "The complaining witness gave an explanation for his erroneous estimate of the robber's height. He said he was on the ground and had to look up at the robber who was standing in the truck, the floor of which was about two feet above the ground. This explanation is reasonable as far as it goes and could account for the witness' first impression of the height of the robber. However, the witness got into the truck next to the robber. He was then on the same level and he could compare the robber's height with his own."

Although the State in the instant case argues that this discrepancy is understandable in that the men were seated in the cab most of the time that Hubbard saw them, he stated that he saw the men standing when they hailed his cab. Furthermore, it is somewhat difficult to understand how Hubbard, thinking this man was about 5′ 7″ or 8″, would not only pick out and identify a man 8 or 9 inches taller a month later where there were three

461

men together, but also would recognize him upon seeing him alone sometime during that month time lapse.

A second discrepancy pointed out by the defendants is that Hubbard failed to notice or mention that Williams and Lee had mustaches. At the trial he testified that on September 16th Williams was clean-shaven, "just like he is now." He also stated that Lee did not have a mustache at the time of the crime. The record shows that at the trial both Williams and Lee were wearing mustaches. Lee testified that he had had his since the age of 15 and cut it off only for basic training in the Army. He produced an Army identification picture of himself taken in 1954 in which he had a mustache. He also stated that he could not grow his mustache new in two months (the approximate time between his arrest and trial). Williams also testified that he had his mustache on the date of the robbery.

This court in People v. Kincy, 72 Ill App2d 419, 219 NE2d 662, said at page 424: "If the defendant had such a mustache on the day of the occurrence, that would have been something that could not normally have been overlooked." The fact that the complaining witness did not at the time of the trial see the mustaches on two of the defendants casts a cloud on the certainty of his identification of the defendants as the men who robbed him. Those are characteristics which one would ordinarily notice if one had a good look at a person's face.

It has been pointed out above that the lighting conditions were poor at the time of the robbery, and that the only well-lighted view of the passengers was had by the driver at a time when he did not know there was anything wrong. Furthermore, it was almost a month later that the driver next saw the three men together.

These circumstances, as well as the lack of showing in the record that the witness even noticed the distinguishing characteristics of defendants, leave a doubt as to the

certainty of his identification of them as the men who robbed him.

The defendants also point out that both Williams and Lee presented alibis which were verified by members of their respective families. Even though this evidence was not presented by independent third parties we must be mindful of the language in People v. Gardner, 35 Ill2d 564, 221 NE2d 232, wherein the court said at page 571:

"Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed. (People v. Fiorita, 339 Ill 78; People v. Kidd, 410 Ill 271.) Neither can we disregard the evidence of alibi where the sole and only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime. People v. Peck, 358 Ill 642; People v. De Suno, 354 Ill 387; People v. McGee, 21 Ill2d 440, 444."

The State urges that the complaining witness was certain in his identification and was able to describe the clothing worn by two of the robbers. However, the defendants were not arrested until nearly one month later and there was no showing that they were then wearing or even owned clothing similar to that described by Hubbard.

Finally defendants point out the time lapse between the robbery and the subsequent identification and arrest. In People v. Capon, 23 Ill2d 254, 178 NE2d 296, the court said that lapse of time goes to the weight of the evidence. Here Hubbard did not notify the police of the defendants' identity until one month after the crime, although he testified that he had seen two of them individually during the month. He said he waited until they were all together because by having one arrested

he might warn the others. No reason was given for his expectation that they would all be together again where he could see them.

The totality of the factors discussed above are sufficient to discredit the identification of the defendants. In our opinion these factors completely outweighed the subsequent events such as the driver's picking out the defendants as the men who robbed him and identification of them in court. People v. Marshall, supra. The convictions of Martin and Williams cannot stand on an identification which is doubtful, vague and uncertain.

Judgments reversed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.