THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANGEL CRUZ, Defendant-Appellant.

Second District   No. 77-602

Opinion filed April 23, 1979.

Mary Robinson, Michael Mulder, and Alan Goldberg, all of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of armed robbery and sentenced to not less than 6 nor more than 12 years in the penitentiary. In this appeal he contends (1) that he was not proven guilty beyond a reasonable doubt; (2) that he was seriously prejudiced by the introduction at his trial of certain "mug" shots; (3) that his defense was damaged in the eyes of the jury by the trial court remarking that defense counsel was attempting to invoke the sympathy of the jury by certain questions which were irrelevant, (4) in a supplemental brief the defendant also raises the contention that he was prejudiced by an improper instruction on circumstantial evidence.

On October 26, 1976, at approximately 3 p.m., Kramer's Gas Station in Aurora was held up. The station attendant, Jeffrey Reuland, testified that a man about six feet two or three inches tall, wearing an "Afro" hairstyle and looking like a Negro or Puerto Rican Negro, approached the station and spoke to him about buying some STP. This man then produced a gun and held it on Reuland, telling Reuland to give him his money. Reuland gave the robber the money he had which was the receipts of the station in the approximate amount of $100. The robber then went out the door of the station and across the street to an old white

Mustang. Reuland waited for a few seconds and then came out of the station and saw that the robber was just entering the Mustang. He saw an acquaintance, Rick Rayboine, approaching the station and told Rayboine what had happened and asked him to drive down the street and get the license number of the Mustang which was just pulling away. Rayboine did so and noted the license number, which was quickly traced by the police to Beverly Walls, an acquaintence of the defendant. Shortly afterward, the defendant was arrested. The station attendant and Rayboine both identified the defendant at trial as the robber.

The defendant did not admit the robbery and presented an alibi indicating that he was at a drug clinic at the time of the robbery. Two witnesses—one the director of the Aurora Area Drug Abuse Project, and the other, a clerk in the clinic, testified that they had seen the defendant at the clinic at about the same time the robbery was committed. The defendant admitted having borrowed Beverly Walls' Mustang on the morning of the day of the robbery and Beverly's husband testified that the defendant did not return the car until about 4:30 that afternoon. The defendant did not dispute this.

The defendant could not dispute the evidence that the white Mustang he had borrowed had been at the scene of the robbery, since that had been established by tracing the car's license number. To account for the presence of the car while denying his involvement in the robbery, the defendant said that he had driven the car to a tavern about 1:30 p.m. on the day in question before going to the drug clinic for his regular treatment. When he came out of the tavern it was approximately 2:30 and he was a little "high" and could not find the car. He decided to go to the clinic on the bus but he was not able to see the doctor at the clinic and he returned to the vicinity of the tavern where he had left the car. He found the car about a block away with a black man in it tampering with it. The defendant said he chased the black man, who was trying to steal the tape recorder, and had a fight with him but the black man got away with the tape player and the defendant could only save the tape case. The defendant said he then drove the car to the place where Beverly Walls worked and she and her husband then drove the defendant back to the clinic so the defendant could pick up a prescription, after which they drove him to his house. This version, if true, would mean that the black man found the defendant's car sometime after 2:30, took it and used it for the robbery about 3, then brought it back to the same approximate location and left it sometime before 3:30. Then, either he or some third person attempted to steal the tape player at the exact moment when the defendant, returning from his fruitless errand at the drug clinic, managed to find out where the car was parked and saw that the tape player was in the act of being stolen. The jury evidently did not believe this story and in

light of the testimony of the State's witnesses on the point, the jury could have found the defendant's version unbelievable.

■■ Therefore, as to the defendant's first contention, wherein he claims that the evidence was not sufficient to convict him beyond a reasonable doubt, we disagree. In our view of the case, the defendant's presence at the scene of the robbery was implied by the identification of the car he had borrowed that day as being the car involved in the robbery, since both Reuland and Rayboine testified that the robber left the scene in that car. While the defendant had a right to explain and refute this circumstance, his explanation apparently lacked credibility and failed to raise a reasonable doubt as to his guilt in the minds of the jury. We conclude that the State's case was strong enough to sustain the conviction in spite of the defendant's alibi.

While the defendant's explanation of the Mustang's presence at the robbery was hardly credible, the defendant is entitled to an open-minded jury, which treats him as innocent until he is proven guilty. The defendant maintains that he was deprived of this protection by the use of a photo introduced by the State which, he claims, had no evidentiary relevance to the present case and was presented to the jury solely as a means of prejudicing the defendant in its eyes. The photo in question was from the police files and was taken on an earlier occasion, not related to the present offense. The defendant, in taking the stand in his own behalf, had admitted a felony conviction which occurred some seven years prior to the present offense, and defendant argues the jury might easily have inferred that the photo in question related to a third contact with the police, which might have proved prejudicial if the jury realized the photo was indeed a "mug" shot.

The trial court, evidently aware of this possibility and of the strictures against the use of obvious police photos because of their prejudicial effect (*People v. Clark* (1973), 12 Ill. App. 3d 280; *People v. West* (1977), 51 Ill. App. 3d 29), required that police identification be erased from the photos. The defendant, however, insists that these photos are still easily recognizable as police or "mug" shots and hence are just as prejudicial as if the original identifying information had been retained. The defendant cites several cases holding that the admission of "mug" shots is prejudicial under certain circumstances, where such photos have less probative value to the prosecution than prejudicial effect on the defendant. In *People v. Murdock* (1968), 39 Ill. 2d 553, 562, the court said:

"We agree that the front and profile views of the defendant in the photographs might very well suggest to the jury that they were 'mug' shots taken for police files and, since there was no probative purpose for their admission into evidence, find that the photographs were erroneously admitted."

Since there were other errors requiring reversal in that case, the court did not decide whether such evidence alone would be so prejudicial as to require a new trial.

In *People v. Clark* (1973), 12 Ill. App. 3d 280, 282-83, photos which clearly were identifiable as "mug" shots in the photos themselves were offered into evidence and were objected to. After a conference, it was agreed that the legend on the front profile view would be deleted by cutting it off. However, the legend on the profile view was not removed and the court in that case held the photos to be prejudicial.

In *People v. West* (1977), 51 Ill. App. 3d 29, 31, this court held a photo to be prejudicial where it carried the legend "Police Dept. Elgin Illinois" and the year 1972 on its face, where the photo tended to link the defendant with an earlier offense, not presently charged, "because the prejudicial effect is so great as to overcome any relevance or probative value."

It should be noted, of course, that there is a qualitative difference between the photos in the *West* and *Clark* cases and those objected to in the case before us. In both of the earlier cases there was either clear evidence of their being "mug" shots or at least such remaining evidence that would suggest that fact. However, in a much later case, *People v. Wheeler* (1979), 71 Ill. App. 3d 91, this court expressly overruled *People v. West* (1977), 51 Ill. App. 3d 29, and held that the use of mug shots with the name of the police department and date thereon are not reversible error where a relevant evidentiary purpose is proved thereby.

In the case before us, the defendant contends that the issue was close because of the strength of his alibi witnesses; that the introduction of the photos in question was unnecessary and irrelevant for any issue in the trial and the total effect was, therefore, more prejudicial to him than valuable to the State for any evidentiary purpose.

The defendant points out that the victim identified the defendant as the robber, both before from a photo and during the trial, and Rayboine likewise identified the defendant before, at the photo lineup, and in court. Thus, the defendant argues, the photos themselves added nothing of an evidentiary value, since a mere photo has no significance standing by itself—it is only relevant as placing the defendant at the scene of the crime, and this had already been done in the State's case in chief.

The State does not concede that the photos in question had no evidentiary value. Both the robbery victim, Reuland, and his companion, Rayboine, in identifying the defendant, noted that his hair appeared to be somewhat shorter at the time of the trial than when they saw him on the day of the robbery. Since they had both described the defendant to the police immediately after the robbery as having an "Afro" hairstyle, which

made it difficult to judge his height, the photos in question showing a distinct "Afro" haircut on a date previous to the robbery, certainly have some evidentiary value. Generally, if evidence is material and relevant to an issue in a criminal trial even though it tends to be prejudicial, it is nevertheless admissible when its probative value outweighs the possible prejudicial effect, and a determination thereof lies within the sound discretion of the trial court.

A similar situation was involved in *People v. Maffioli* (1950), 406 Ill. 315, where the court approved the admission of a police photo as being relevant to the material issue of the defendant's style of haircut and general appearance at the time of the offense. While, as pointed out by the defendant's brief, the photo in that case was taken for the current (not a previous) offense, the same logic applies—the question of a different hairstyle at the time of a robbery would be pertinent in verifying the initial identification description which tallied with the photo in question.

Even conceding, however, that the photos were of limited evidentiary value in view of the opportunity for identification at the scene of the robbery and the confirmation thereof in court, we can and must look further and consider the probable effect on the jury of this piece of evidence in the context of the whole trial, for the question is not whether the mug shots were or might have been improper as an abstract proposition, but whether they were so prejudicial in this particular case as to require a new trial. The defendant contends that the effect of these photos, if given their worst interpretation, may have been the deciding factor in the jury's determination that the defendant was guilty. He thus invites us to speculate as to what may have gone on in the minds of the jury and to a limited extent we can properly do so in considering the effect of disputed evidence. But, if we are to consider the effect the photos had on the jury, this should not be done in a vacuum from which all other prejudicial evidence of the defendant's character and habits is excluded. We must take cognizance of the total picture of the defendant, his character and habits as disclosed by his own and his witnesses' testimony, as part of the total picture. Thus viewed, we cannot believe that the effect of the mug shots on the jury's estimation of the defendant's character, tendencies and general reputation was radically affected by these photos. The defendant took the stand and admitted to a previous conviction for a felony and in the course of his testimony indicated that he was a dope addict with problems associated with abuse of both drugs and alcohol. His testimony and that of his wife indicated that they were both unemployed and living on the proceeds of an insurance settlement, following the wrecking of the defendant's car, yet the defendant was spending money freely for drugs and liquor. His small child was so seriously ill on the day of the robbery as to have caused his wife to ask

him to borrow a friend's car to take the child to a medical clinic, yet after being told by the doctor on the phone to wait to see how the baby's fever developed before bringing him to the clinic, the defendant went off in the car and spent most of the day—except for a claimed trip to his own drug clinic—in taverns, coming home that night by the testimony of his own witnesses extremely drunk.

■■ If we are to enter into any speculation as to the jury's perception of the defendant and how it may have been affected by the admission of the police photos in question, we must also weigh the effect of his own testimony in estimating such character and social conduct. Where the defendant has admitted so much that is damaging in the eyes of the jury, showing irresponsibility, bad habits, drug addiction and a criminal record, we cannot readily suppose that the mug shots in question, even if of a somewhat prejudicial effect, were the deciding factor in the defendant's conviction merely because they might have indicated to the jury that the defendant may have had a third contact with the police besides the ones he admitted to in his conviction and the present charge. In view of these considerations we are not inclined to regard the admission of the police photos themselves as having the denigrating effect claimed by the defendant—the defendant's picture of himself created much more prejudice than the mug shots and this being true we are not required to believe that the latter were decisive. For the reasons indicated above we do not, therefore, regard that evidence in this case as mandating a new trial.

■■ The issue as to the prejudice to the defendant created by the trial court's remark during defendant's testimony that further testimony as to the condition of the defendant's feet was "just evoking sympathy from the jury," we think clearly does not rise to the level of reversible error. Defense counsel was attempting to show that the defendant's foot condition was unusual and crippling and would have been remarked on by those identifying him, in addition to suggesting that he was not able to run away from the scene, as they alleged he did. We think, however, that the defendant's foot condition had been well established in his testimony by the time the judge's remark was made and the prejudice, for any legitimate purpose, was minimal in the total context.

■■ The defendant also complains about a prejudicial instruction on circumstantial evidence. Illinois Pattern Jury Instruction, Criminal, No. 3.02 (1968), was given and he says it should not have been given because there was no circumstantial evidence in the case—all of the evidence was direct. The giving of an instruction on circumstantial evidence has been held to be error where it was not justified by the facts of the case. (*People v. Gardner* (1954), 4 Ill. 2d 232; *People v. Estes* (1976), 37 Ill. App. 3d 889.) However, we do not agree that such error occurred here because we think

there was circumstantial evidence tending to link the defendant with the crime. The association of the automobile which fled the scene of the robbery with the defendant by virtue of the testimony of Eddie Walls that the defendant had borrowed the car from him on the day of the robbery and had not returned it until after the robbery occurred is, we think, circumstantial evidence linking the defendant with the robbery. Also there was evidence by Eddie Walls that when he saw the defendant—at a time shortly after the hour of the robbery—the defendant had a thick wad of bills with him—which would be circumstantial evidence linking the defendant with the taking of the money in the robbery in question. We believe the instruction was not in error in view of the evidence adduced at trial.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

SEIDENFELD and NASH, JJ., concur.