THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KELVIN TAYLOR, a/k/a Calvin Taylor, *et al.*, Defendants-Appellants.

First District (5th Division)    No. 80-1273

Opinion filed July 31, 1981.

16

Ralph Ruebner and Louise Katz, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Alphonse R. Tomaso, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants, Kelvin Taylor and Delores Fenner, were tried by a jury and found guilty of armed robbery. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2.) Taylor was sentenced to a term of 6 to 9 years and Fenner to a term of 4 years to 4 years and one day.

On appeal, defendants contend that: (1) the admission of their pretrial and in-court identification denied them due process of law; (2) it was an abuse of discretion to deny the jury's request to review the testimony; and (3) they were not proved guilty beyond a reasonable doubt. We affirm.

Prior to trial Taylor filed a motion to suppress in-court identification. The basis of this motion arose out of a "one man show-up" resulting in the victim's identification of defendants at the scene shortly after the armed robbery.

At the hearing on the motion, Fenner testified. On July 28, 1977, at approximately 10 p.m. near the intersection of Ashland and Division, she was approached by a Chicago police officer as she was getting into the passenger side of an automobile. She was instructed to get in the back seat of a police squad car where another officer was waiting. Shortly thereafter, Taylor approached the officer and inquired as to the trouble. Taylor admitted that the license number which the officer had copied from the car Fenner had been getting into was his. Whereupon Taylor was also placed in the back seat of the squad car. Both defendants were handcuffed.

Fenner further testified that they were driven several blocks stopping at three bars. One of the officers entered each of the taverns. While the officer returned alone from the first two, on his return from the third he was accompanied by two individuals. She described the area as being dark, but stated that she was able to see the faces of these individuals as

they came out of the tavern and determined that one was short and old and the other in his middle thirties. The older one peered through the squad car window from a distance of 20 feet and identified defendants as his assailants. Thereafter, defendants were arrested for armed robbery and transported to the police station.

It was stipulated that defendant's seizure took place within a relatively short period of time after the commission of the armed robbery. Thereafter, defendants' motion to suppress was denied.

At trial the victim testified through an interpreter. On July 26, 1977, at approximately 10 p.m. he was walking northbound on Ashland Avenue when three individuals—two men and a woman—robbed him of his money. One man grabbed his neck from behind as Taylor approached him from the front with a 12-inch knife and as Fenner reached into his pocket and removed $450. The victim was then dragged to the ground and his assailants fled to an automobile 10 feet away. The victim noted the car's license plate numbers 5066. After the robbery the victim went to his son's house and summoned the police. He admitted that when he identified defendants in the squad car he was nervous, excited and angry about being robbed.

Officer Smith testified that approximately 10 p.m. on the evening of July 26, 1977, he received a radio dispatch concerning a robbery victim. Smith proceeded to Ashland Avenue where he met the victim. The victim informed him that three individuals robbed him and that one of them grabbed him around the neck, another put a knife to his neck, and the third individual, a female, went through his pockets and took his money. He described his assailants' automobile as dark with a partial license plate number 5066. The victim also indicated that the female assailant was wearing a blue jacket and a bluejean outfit and the individual with a knife was taller than he was. Thereafter Officer Smith and his partner toured the area and observed a dark automobile with the license number HL 5066 at the corner of Ashland and Division. Upon approaching the vehicle, Smith observed Fenner sitting on the passenger side and requested that she alight from the car. She was handcuffed and placed in the squad car. At this point Taylor approached and asked Smith what he was doing. After Taylor acknowledged that he owned the car, he was searched and placed in the squad car.

The officers first drove defendants to the victim's home, where they learned that the victim had returned to the scene of the crime. Defendants were then taken to the scene of the crime. The victim approached the squad car and identified defendants as his assailants. While the victim testified that he identified Fenner a second time at the police station, Smith indicated that at the station the victim was not sure about Fenner's identification. However, when arrested, Fenner was wearing a blue jacket and a bluejean outfit. Finally, Smith apprehended defendants approxi-

mately 15 minutes after speaking with the victim and the on-the-scene identification occurred within 30 minutes of the robbery.

Fenner testified that between 8 and 9 p.m. on the evening of July 26, 1977, she and Taylor were having dinner at a restaurant located at Division and Ashland. As defendants left the restaurant to go to a tavern down the street, a friend of Taylor's whom Fenner had never seen asked to use Taylor's car. Taylor gave him the keys and defendants proceeded to the tavern where they stayed until 9:45 p.m. Defendants went back to the restaurant to see if the car had been returned and another individual named George Lindsey gave the keys to Taylor outside the restaurant. While Lindsey and Taylor continued their conversation, Fenner walked down the street. As she approachd Taylor's car, a police officer pulled up and instructed her to get in the squad car. Taylor walked up and inquired as to the trouble. After informing the officer that the car was his, Taylor was placed in the back of the squad car. While in the squad car, both defendants were handcuffed. Defendants then were driven several blocks stopping at three taverns. One of the officers entered each tavern. On his return from the third, he was accompanied by two individuals—one old, the other middle-aged. When the victim looked in the squad car at her, he nodded in a negative fashion and when he looked at Taylor he nodded in a positive fashion.

George Lindsey, a casual acquaintance of Taylor's, testified that the exchange of keys between Taylor and Willie Ramsey occurred inside the restaurant. Afterwards Taylor went to the bar next door and Ramsey and his girlfriend left with Taylor's car. Thirty minutes later Ramsey returned to the restaurant and gave Taylor's car keys to him. He subsequently returned the keys to Taylor. Lindsey described Ramsey as having a light complexion and facial hair but could not recall what the girl who accompanied Ramsey looked like. Although he knew Taylor was in trouble because of this incident, he never reported the exchange of keys to the police or anyone else. Finally, Lindsey testified that while the incident occurred in 1977, he did not recall the day or month, "perhaps it was June of July."

Thereafter, the jury was instructed as to the law and retired for deliberations. Approximately 2½ hours later, the jury requested the testimony of Fenner and Lindsey. The court denied this request. Thereafter the jury returned a verdict of guilty as charged as to both defendants. Taylor was sentenced to a term of 6 to 10 years and Fenner to a term of 4 years to 4 years and on day. Defendants appeal.

OPINION

I

Defendants first contend that the admission of their pretrial and in-court identification denied them due process of law in that the identifica-

tion was unreliable, inconsistent and based upon unnecessarily suggestive procedures. They argue the absence of a description given to the police prior to the show-up coupled with the arresting officers' testimony that the victim could not positively identify Fenner at the police station renders the victim's identification unreliable and thereby created a substantial likelihood of irreparable misidentification. The State maintains that the trial court properly determined that defendants failed to establish that the on-the-scene identification was improper, suggestive or unreliable. In addition, the State submits that, regardless of the feasibility of the identification procedures, the totality of the circumstances indicates that the victim's identification was reliable and that confrontation did not create a substantial likelihood of irreparable misidentification.

■■ Defendants have the burden of establishing that the pretrial confrontation was impermissibly suggestive. (*People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.) In order to fulfill this burden, the totality of circumstances must not only demonstrate suggestiveness but also a substantial likelihood of misidentification. (*People v. Mingo* (1980), 89 Ill. App. 3d 285, 411 N.E.2d 968; see also *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967; *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.) Once accomplished, the State may nevertheless overcome this obstacle by a clear and convincing showing, based on the totality of the circumstances, that the witness is identifying the defendant solely on the basis of his memory of the events at the time of the crime. *People v. McTush*; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330.

In the instant case defendants' motion to suppress the in-court identification of defendants was based solely on the one man show-up tactic used by the police. Defendants maintain that this procedure was unnecessary, unduly suggestive and created a substantial likelihood of irreparable misidentification. The evidence adduced at the hearing on the motion merely established that defendants were arrested, handcuffed, placed in a police car and brought to the scene of the crime where they were identified by the victim. It was then stipulated that defendants' seizure took place within a relatively short period of time after the commission of the armed robbery.

■■ While it is recognized that elements of suggestiveness are inherent in any show-up identification procedure, such procedures are justified in various circumstances. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. McKinley* (1977), 69 Ill. 2d 145, 370 N.E.2d 1040.) One-on-one show-ups are permissible where the witness had an excellant opportunity to observe the defendant during the commission of the crime and

where prompt identification was necessary for the police to determine whether or not to continue their search. (*People v. Manion*; *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68.) In fact, it has been recognized that rather than bringing about misidentification, this procedure insures accuracy by fostering the desirable objectives of fresh, accurate identifications which may facilitate the immediate release of an innocent suspect as well as enabling the police to resume their search for the fleeing offender. (*People v. McKinley*; see also *People v. Elam* (1972), 50 Ill. 2d 214, 278 N.E.2d 76.) Furthermore, numerous decisions suggest that police officers may be derelict in their duties should they fail to cause such a confrontation. *People v. McKinley*; *People v. Elam*.

■■ It is apparent, from defendants' motion and the evidence adduced at the hearing on the motion, that defendants were attempting to establish the *per se* exclusion of the identification evidence on the sole basis that the show-up procedure was inherently suggestive. However, the United States Supreme Court in *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, rejected the *per se* approach in determining the admissibility of out-of-court identification evidence and unequivocally adopted the totality-of-the-circumstances approach in which reliability is the linchpin in determining the admissibility of identification testimony. (See also *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) Considering that defendants failed to present any evidence to negate the reliability of the victim's identification, the trial court did not err in concluding that defendants failed to establish that the on-the-scene show-up was unnecessarily suggestive or that it created a substantial likelihood of misidentification.

■■■ Defendants further argue that the victim's testimony at trial sufficiently establishes that his identification was unreliable. Defendants specifically point to the victim's failure to give a complete description of his assailant, his incredible testimony regarding his opportunity to observe his assailants and the uncertainty of his identification as creating a very substantial likelihood of irreparable misidentification. Since a ruling on a motion to suppress is not final and may be reversed at any time, a reviewing court may consider evidence during trial after the conclusion of the suppression hearing. (*People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808; *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 405 N.E.2d 1121; *People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158.) In assessing the reliability of an identification, the following factors are to be considered: (1) the opportunity of the witness to view the criminal; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime

and the confrontation. *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *Neil Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.

Concerning the first of these factors, the victim testified that as he was walking northbound on Ashland Avenue he was accosted by three individuals. He further testified that there were street lights within 30 feet and that he was able to observe defendants at close range for a period of 5- to 10-minutes. While defendants maintain that the victim's testimony concerning a 5- to 10-minute encounter is not credible, it is for the trier of fact to determine a witness' credibility. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Furthermore, the victim testified that he did not own a watch and that therefore the time increments were merely estimates. The present time frame was put in proper perspective when he explained that he was held long enough for the three individuals to remove money from his pockets and flee to a car 10 feet away.

In regard to the second and third factors, defendants argue that the victim's failure to give a complete description of his assailants is inconsistent with having a 5- to 10-minute period to view his assailants. They argue that the lack of detail indicates a lack of attention and undercuts the accuracy of the description thereby rendering the identification unreliable. Initially it should be noted that an identification is not made by distinguishing separate features but by the total impression made upon the witness. (*People v. Lindsey* (1979), 72 Ill. App. 3d 764, 391 N.E.2d 382.) Consequently, omissions in the preliminary descriptions, where the witness has an adequate opportunity to observe the offender, do not necessarily affect the credibility of the witness' identification. (*People v. Lindsey; People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318.) While defendants argue that the victim's failure to inform Officer Smith that Taylor had a beard on the night of the robbery raises a serious question of whether the victim carefully observed the face of his assailants, we note that the only testimony suggesting that Taylor was sporting a beard on the night of July 26, 1977, came from Fenner. Not only was this testimony self-serving, it must be considered suspect in light of Officer Smith's as well as the victim's failure to note the presence of facial hair. Even accepting *arguendo* that Taylor did have facial hair on the night in question, the victim's failure to relate this detail would not destroy his credibility or render his positive identification unreliable. (See *People v. Mendoza; People v. Smith* (1978), 59 Ill. App. 3d 480, 375 N.E.2d 941.) Furthermore, it was Officer Smith who testified as to the victim's description of his assailants and the automobile they used in their escape. The description as related by Smith exhibited a high degree of attention and was completely accurate. Smith never indicated that he was testifying as to the complete discussion he had with the victim. Finally,

the fact remains that the victim was never asked at trial to describe his assailants. Consequently, unlike defendants suggest, there is simply no indication that the victim could not describe his assailants in minute detail. ■■ With respect to the fourth factor, the victim testified that he made a positive identification of defendants at both the scene of the crime and at the police station. Officer Smith, on one hand, testified that the victim made a positive identification of defendants at the initial show-up but was not sure about Fenner's identification at the police station. It should be noted that Smith's version is not inconsistent with the victim's testimony that he identified both defendants at the police station. Even assuming *arguendo* that the victim was unable to make subsequent identification, this fact would not establish that the show-up was suggestive but would merely go to the credibility of the victim and the weight to be given his testimony. (*People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 380 N.E.2d 1204.) Furthermore, any difficulty experienced by the victim in identifying Fenner must be considered in light of his excited state and the fact that he did not speak English. In regard to the fifth factor, the record indicates that the show-up occurred within 30 minutes of the armed robbery.

■■ Accordingly, we find that the victim's out-of-court identifaction of defendants was reliable under the totality of the circumstances. In the wake of a reliable out-of-court identification, we also find it unnecessary to reach the issue of whether the in-court identification was proper. *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

## II

Defendants next contend that the trial court abused its discretion in denying the jury request for the testimony of defense witnesses Fenner and Lindsey.

■■ It is well settled that it is within the discretion of the trial court to allow or refuse a jury's request for the review of testimony and its decision will not be disturbed absent a clear abuse of that discretion. (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) The existence of the discretionary power imposes a duty on the trial court to determine whether a review of the requested testimony would be helpful or harmful to the jury's proper deliberations. (*People v. Martin* (1980), 84 Ill. App. 3d 822, 406 N.E.2d 49; *People v. McClellan* (1979), 71 Ill. App. 3d 611, 390 N.E.2d 131.) Because it is the jury itself requesting to review the testimony, the trial court must start with the assumption that the jury feels that such a review would be helpful. *People v. Martin*; *People v. McClellan*.

In the instant case there can be no doubt that the trial court exercised

its sound judgment in denying the jury's request. At approximately 2:10 p.m. after discussing the request with counsel, the court sent the following message to the jury:

"In answer to your question the Court will not at this time provide you with a transcript of the testimony you have requested."

The court stated numerous reasons for denying the jury's request. First, the jury had only been deliberating a short time and that therefore the request was premature. Secondly, the testimony in the instant case was both brief—no more than three or four hours—and uncomplicated. The court also questioned the availability of the court reporter who had transcribed Fenner's testimony but stated he would make an inquiry in the next few minutes. (Compare *People v. Tolbert* (1980), 81 Ill. App. 3d 977, 401 N.E.2d 1004.) The court went on to say that if the circumstances changed, "It may very well be even without further request of the jury that I may decide as time goes on to provide that transcript." Less than an hour later the jury returned a verdict of guilty as to both defendants.

Under the circumstances we cannot say that the trial court abused its discretion in denying the jury's request for the testimony of Fenner and Lindsey.

### III

Defendants finally contend that they were not proved guilty beyond a reasonable doubt.

It is for the trier of fact to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) Discrepancies or conflicts in the testimony generally affect only the weight to be given the testimony and the trier of fact is free to accept or reject a witness' testimony. (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260.) It is well established that the identification by a single witness who had ample opportunity for observation is sufficient to sustain a conviction. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) It is not necessary that the trier of fact believe a defendant's alibi rather than the positive identification of the victim even though the alibi testimony was given by a greater number of witnesses. *People v. Marshall* (1973), 9 Ill. App. 3d 1035, 293 NE.2d 646.

We have carefully reviewed the record and find the evidence sufficient to sustain the verdict of the jury beyond a reasonable doubt. The inconsistencies alluded to by defendants are not sufficient to create a reasonable doubt as to their guilt.

## IV

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.