THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ERNEST TAYLOR, Defendant-Appellant.

Second District   No. 85—0393

Opinion filed May 6, 1986.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, and Eleesha Pastor O'Neill, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

The defendant, Ernest Taylor, was convicted in the circuit court of Winnebago County of armed robbery and sentenced to 25 years in the Department of Corrections. He appeals.

On appeal, defendant raises three issues: (1) he claims that he was not proved guilty beyond a reasonable doubt because his conviction rested solely on the vague, doubtful and uncertain identification of the two victims; (2) he claims that he was prejudiced by the admission of certain evidence tending to associate defendant with prior unlawful conduct; and (3) he argues that the 25-year sentence for armed robbery is excessive.

On December 30, 1984, Susan Wilcox and her boyfriend, Eric Lindquist, ordered food at the drive-up window at Taco John's Restaurant in Rockford. As they were waiting at the window for their food, a man holding a gun in his left hand walked up to the car and

said, "Give me your money." Wilcox attempted to push the gun away. The man then stuck the gun in her mouth, cutting her lip. Lindquist then got out of the car and struggled with the man, but Lindquist slipped. The man then grabbed Wilcox's purse from the floor of the car and ran. The victims then ran about half a block and flagged down Officer Clint Kellett of the Rockford police department, who was patrolling in the area, and reported the robbery. Both gave Officer Kellett a description of the robber which indicated that he had no facial hair.

At a photo lineup the following day, each victim independently chose a photo of the defendant as the man who had robbed them. At a subsequent, in-person lineup, Wilcox was unable to identify anyone, but she stated that she was about 80% certain that "#4" (the defendant) was the man who robbed her. She stated that she failed to identify anyone because the officers conducting the lineup cautioned her to be absolutely certain before picking anyone. Lindquist initially narrowed the choice down to two persons, then hesitated a long time before picking the defendant. Both victims identified defendant in court.

At the trial, Officer Dominique Iasparro testified that he went to the apartment of a man named Keith Armstrong to question him regarding the robbery. No one was at Armstrong's residence, but as Officer Iasparro was leaving, he saw a person he recognized as Ernest Taylor. Iasparro stated that he "had an interest" in Taylor in connection with the investigation. Taylor agreed to accompany Iasparro to the police station.

Defendant testified that he was at a party at a skating rink until 1:00 a.m. He admitted to having two prior felony convictions, but claimed to know nothing about the robbery in question. He also presented other witnesses whose testimony tended to support his alibi.

On March 27, 1985, the jury found Taylor guilty of armed robbery. On April 3, the court sentenced him to 25 years in prison.

On appeal, the defendant first contends that he was not proved guilty beyond a reasonable doubt because the identification of the two victims was vague, doubtful and uncertain. Defendant claims that the witnesses had an insufficient opportunity to view the perpetrator at the time of the occurrence. This is supported, he claims, by their hesitation at the photo array and the in-person lineup and by their failure to mention the presence of facial hair in their initial description of the robber. In addition, he claims that since both witnesses hesitated to varying degrees at the in-person lineup, their in-court identification may have been based on their recollection of the

photo array rather than their recollection of the actual incident.

It is well settled that a positive identification by a single eyewitness is sufficient to sustain a conviction. (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866; *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.) Factors to be considered in determining the reliability of an identification include the opportunity for the witness to view the perpetrator at the time of the incident, the witness's degree of attention, the accuracy of the witness's prior description, the level of certainty of the witness at the subsequent confrontation and the length of time between the crime and the confrontation. (*People v. Taylor* (1981), 99 Ill. App. 3d 15, 424 N.E.2d 1246.) An initial viewing time of five to ten seconds has been held sufficient. *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688; *People v. Brown* (1977), 50 Ill. App. 3d 348, 365 N.E.2d 907.

In this case, the evidence was not clear as to how long the robbery took. Both victims struggled with the robber, and the robber's face was in close proximity to the victims. The parking lot was well lit, with additional light from the drive-thru window. Thus, both victims had ample opportunity to see the robber, and both were obviously paying attention. The photo lineup took place the day following the robbery, and the in-person lineup a few days after that. Although the witnesses were at times somewhat hesitant, they consistently identified the defendant as the robber.

There remains the question of the witnesses' failure to mention facial hair in their initial description of their attacker. Generally, identifications are based upon the "total impression" of the witness rather than on a single distinguishing feature. (*People v. Shelby* (1984), 123 Ill. App. 3d 153, 462 N.E.2d 761; *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356.) Failure to include facial hair in the initial description has been held to be a "minor discrepancy." (50 Ill. App. 3d 952, 956, 365 N.E.2d 1356; *People v. Rogers* (1975), 32 Ill. App. 3d 788, 790, 336 N.E.2d 784.) Such a discrepancy does not destroy the validity of the identification, but rather goes to the weight to be given to this testimony. *People v. Williams* (1986), 140 Ill. App. 3d 116, 488 N.E.2d 587; *People v. Shelby* (1984), 123 Ill. App. 3d 153, 164-65, 462 N.E.2d 761; *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.

In the present case, it was undisputed that the witnesses told Officer Kellett that the assailant had no facial hair. It was also undisputed that the photo of Taylor which the witnesses chose shows him with a thin goatee and that he wore the goatee at the time of

the robbery. Nonetheless, it appears from the record that the defendant's skin is rather dark and the beard is rather thin. It was of the type which the witness "might not have noticed." (*People v. Hefner* (1979), 70 Ill. App. 3d 693, 388 N.E.2d 1059.) The witnesses' description of Taylor was otherwise relatively accurate.

In *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356, this court upheld the defendant's conviction even though the witnesses' initial description of the defendant contained several inaccuracies. For example, she described her assailant as being six-feet tall and weighing approximately 240 pounds, when the defendant in face was 5 feet 9 inches tall and weighed 180 pounds. She had told police that he "maybe *** starting to grow a beard" but at the photo array stated that he had no beard. (50 Ill. App. 3d 952, 956, 365 N.E.2d 1356.) In addition, in *Moore*, the witness failed to identify the defendant at a photo array or lineup, but she positively identified him at the preliminary hearing. Thus in *Moore*, the victim's identification was far less certain than it was in this case, where the victims consistently identified the defendant at all stages of the procedure.

■ The defendant cites *People v. Martin* (1968), 95 Ill. App. 2d 457, 238 N.E.2d 205, for the proposition that the failure of the witness to describe the defendant's facial hair renders the identification inherently unreliable. (95 Ill. App. 2d 457, 462-63, 238 N.E.2d 205; see also *People v. Kincy* (1966), 72 Ill. App. 2d 419, 219 N.E.2d 662.) We note that in *Martin* and *Kincy* other factors were present which called the witnesses' identification into question. To the extent, however, that those cases hold that failure to describe facial hair always renders the identification vague, doubtful and uncertain, they are inconsistent with the great weight of authority in this State and the decisions of this court. (See *People v. Williams* (1986), 140 Ill. App. 3d 116, 488 N.E.2d 587; *People v. Shelby* (1984), 123 Ill. App. 3d 153, 462 N.E.2d 761; *People v. Schroeder* (1982), 105 Ill. App. 3d 677, 434 N.E.2d 546; *People v. Taylor* (1981), 99 Ill. App. 3d 15, 424 N.E.2d 1246; *People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318; *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356.) We believe these cases provide the better reasoning and continue to follow them.

■ We turn now to the second argument advanced by defendant, that he was prejudiced by the admission of certain evidence which tended to associate him with prior criminal activity, particularly police "mug shots" of the defendant, and the remark by a

Rockford police detective that he had "an interest" in the defendant. We discuss these in turn. We note initially that the introduction of the "mug shot" of a defendant to the jury presents an obvious potential for prejudice. These photos "cannot help from being recognized by the average juror" because of his exposure to them on television and on the walls of police stations and post offices. (*People v. Wheeler* (1979), 71 Ill. App. 3d 91, 97, 388 N.E.2d 1284.) The obvious inference is that the defendant has previously been in some type of trouble with the police. (*People v. Cruz* (1979), 71 Ill. App. 3d 76, 79, 388 N.E.2d 1330.) Apparently for this reason, the Appellate Court for the Third District has held that "mug shots" of the defendant not taken in connection with the pending charges are *per se* inadmissible. *People v. Clark* (1973), 12 Ill. App. 3d 280, 297 N.E.2d 395; *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 474-75, 281 N.E.2d 72.

This court, however, expressly rejected that position in *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284, recognizing that such photos may at times have independent probative value. In the present case, the photos admitted were the ones used by the witnesses to identify the defendant. Because it was a question regarding the witnesses' failure to describe defendant's goatee, the photos were relevant to show how the witnesses could have missed it. Furthermore, defendant admitted to two prior convictions. Thus, even though it may have been error to allow the photos to go to the jury room, such error was harmless beyond a reasonable doubt where the jury already knew that the defendant had been previously convicted.

■ Defendant claims he was prejudiced by certain testimony of Officer Dominique Iasparro. Iasparro testified that he encountered Taylor in the stairwell of an apartment building and recognized him. He then stated, in response to a question, that he had an "interest in" Taylor in relation to the investigation of the robbery in question. This testimony was not objected to at the time it was made, and the specific objection was not included in defendant's post-trial motion. Therefore the defendant's appellate contention has been waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Even were we to consider it to determine whether it constitutes plain error, we would find this contention to be without merit. The officer's testimony indicated only that the defendant was being sought in connection with the robbery at Taco John's, a fact which must have been obvious to the jury. Evidence relating to the circumstances of a defendant's arrest on the pending charges is relevant and admissi-

ble. (*People v. Harrison* (1982), 106 Ill. App. 3d 341, 435 N.E.2d 1211.) The cases cited by defendant are distinguishable, as they dealt with testimony indicating that defendant had been under surveillance in connection with a previous offense. See *People v. Stover* (1982), 89 Ill. 2d 189, 432 N.E.2d 262; *People v. Spiezio* (1982), 105 Ill. App. 3d 769, 434 N.E.2d 837.

The defendant's final contention is that the sentence of 25 years for armed robbery is excessive, considering that the victims suffered no great bodily harm and that the defendant was described as a good worker. The imposition of a sentence is within the discretion of the trial court and will be altered only where there is an abuse of that discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344; *People v. Daniels* (1983), 113 Ill. App. 3d 523, 534, 447 N.E.2d 508.) In this case, the record shows that the judge considered the relatively nonviolent nature of the crime, stating, "this is not a heinous offense." On the other hand, he considered the fear, as well as the minor injuries suffered by the victims. He balanced the need for rehabilitation against the goals of deterrence and protection of the public. The most important factor in the imposition of the 25-year sentence appeared to be the defendant's prior record, which the court aptly described as "terrible." It includes numerous juvenile violations, including a revocation of juvenile probation, and five adult convictions, four for felonies. Defendant had been paroled from a previous forgery conviction for slightly more than three months when he was apprehended for the present offense. In light of this record, the court could reasonably have concluded that the potential for rehabilitation of this defendant was relatively slight in relation to the need to protect society and deter others from similar conduct. We cannot say that under the circumstances the trial court abused its discretion.

For the reasons stated above, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

STROUSE and UNVERZAGT, JJ., concur.