**People of the State of Illinois, Plaintiff-Appellee, v. Gerald P. Kincy, Defendant-Appellant.**

**Gen. No. 50,067.**

First District, Third Division.

June 30, 1966.

419

Gerald W. Getty, Public Defender of Cook County, of Chicago (John J. Van Zeyl and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and George Samels, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant appeals from a conviction of robbery after a bench trial in which he was sentenced to the penitentiary for a minimum of five years and a maximum of ten years.

Defendant contends that he was not proven guilty beyond a reasonable doubt, and points out that the single identification of the defendant was vague, doubtful and uncertain.

The facts are these:

Willa Mae Land, the victim of the robbery, testified that she was a clerk in the Pekin Cleaners at 40th and Vincennes Avenue in the city of Chicago, and was so employed on February 8, 1964. That on said date a

man entered the store and said, "Give me your money." She then walked over to the cash register and got out the bills, singles, and asked him if he wanted the change, to which he replied, "Yes." The man had his hand in his jacket and it looked as if there was something inside his jacket which she didn't see. He then left because someone was coming in the store. She further testified that as the defendant was walking out "a *customer* and a lady came in and I told them that I had just been held up." The man who had entered the store didn't say anything but went out. This occurred at about 3:00 o'clock in the afternoon. She next saw the man who didn't say anything but just walked out, about twenty minutes later with the police and with the defendant. After the holdup she called the police and told them that she had been held up by a tall, thin, brown-skinned man; that he had on a jacket and a hat, and that he was in his early thirties. That the man she identified about twenty minutes later had on a jacket and a hat. This witness also testified that the man, whom she had told she had just been robbed, had been in once and brought in a suit about the day before and was coming after this suit. When asked about the color of the jacket that was worn by the man who held her up, the witness answered, "I think it was beige or brown, beige looking. I am not positive." A police officer asked her to check the cash register to determine how much money had been taken. She stated that she was so excited at the time the police asked for this amount that she got it all mixed up. She checked the cash again about 7:30 p. m., which was four and one-half hours after the robbery, and determined that $18 was missing. She said she saw the man in court, indicating the defendant.

Police Officer Joe Clark testified that on the date of the robbery he had gone to 55th and South Park because

a man told him and his partner that he "just had followed a man which had just held up his *mother* in the cleaners." The man who made that statement pointed out the defendant. Officer Clark saw the defendant entering a gasoline station at that location and Officer Clark and his partner arrested the defendant in the station. The defendant was searched, which resulted in finding one-dollar bills, some change and a straight razor. The money, amounting to $11.70, was inventoried. The defendant and the person who had pointed out the defendant, and the two officers then returned to the location of the Pekin Cleaners. Officer Clark also testified that it was about fifteen to sixteen blocks from 40th and Vincennes, the scene of the occurrence, to 55th and South Park, the place of arrest, and that at the time of the arrest the defendant did not have an automobile.

Police Officer Elliot Muse, Clark's partner, was called as a defense witness. He testified that the lady who worked at the cleaning store identified the defendant. "I believe it was her. I am not sure." He further testified that the woman identified the defendant "according to his jacket." She told them it was the same kind of a jacket the fellow had on that robbed her. He also stated that at the time of the arrest he saw defendant counting change on a table and that the defendant said he had won the money shooting dice in the alley.

Defendant's mother, Lacy Campbell, testified that she resided at 3339 Giles Avenue, and that on the date mentioned she and the defendant left her home between 2:40 and 2:45 p. m.; that she had driven him to 55th and South Park. The trip took fifteen or twenty minutes. She further stated that the defendant was going to the El station to meet his daughter, and that after taking the defendant to the named location she returned to her home for a short time and left for work about 3:30, arriving at work at 4:00 o'clock. She further stated that she worked the 4:00 p. m. to 10:00 p. m. shift;

that the defendant's daughter was eighteen and an un-employed housewife, and was going to meet her father between 3:00 and 4:00 p. m., and that the defendant asked the witness to drive him to the El Station. The defendant was living with his mother at the time. He was a barber and cut hair at home. The defendant was going to meet his daughter to give her some money. She dropped the defendant off on South Park across Garfield Boulevard on the southwest corner.

The defendant, Gerald P. Kincy, testified that he resided at 3339 Giles Avenue in Chicago; that he was a registered barber and was so employed at the time of his arrest, and that his place of business was at his mother's home. He further stated that on February 8, 1964, his mother drove him to 55th and South Park where he was going to meet his daughter at the El station at 55th between South Park and Prairie. His reason for meeting his daughter was that he was going to give her some money because she had an infection and was in the latter stages of her pregnancy. When he left his mother's car he walked into the gas station and asked the attendant to convert some change into dollar bills, because he did not want to give his daughter a lot of change. He further stated that he had approxi-mately $5 in change and was arrested as soon as he placed the money on the counter. The straight razor which was found in his possession was owned by him. It had a small nick in it and since he had no facilities for sharpening the razor, he intended, after meeting his daughter, to proceed to a friend's barbershop at 63rd and St. Lawrence to get the razor sharpened in order to service his Saturday customers. He further testified that he was taken to the Pekin Cleaners where Officer Muse said to Mrs. Land, "Don't you recognize him?" and Mrs. Land, according to the defendant, stated that she did not recognize him but recognized the jacket. The police then gave him a receipt for the razor and

$11.70 taken from him. The money consisted of six $1 bills and the rest change. He testified that he charged $1.50 for cutting hair and sometimes would have a lot of change; that the money taken from him was receipts from his barbering business.. He further testified that he was never in the Pekin Cleaners; that the police arrested him a minute after he left his mother's car and that on the day in question he had on a black hat and green jacket. The record also indicates that at the time of trial the defendant had a very prominent black moustache.

It is the contention of the defendant that the single identification of the defendant was vague, doubtful and uncertain, and that the only reasonable inference to be drawn from the testimony of Officer Muse is that the defendant was identified through association of the jacket. The complaining witness, Mrs. Land, did not at any time testify that she had seen the defendant's face, nor did she testify to any of his features. The record is not clear as to whether at the time of the defendant's arrest he had a "very prominent black moustache," but the record does indicate that he had such a moustache at the time of the trial. If the defendant had such a moustache on the day of the occurrence, that would have been something that could not normally have been overlooked. At the time of the testimony of Mrs. Land she stated that the defendant was the one who robbed her, however, in her description to the police, given shortly after the robbery, she failed to mention that the defendant had a moustache. The failure to introduce testimony as to whether or not such a prominent identifying feature as this large moustache was or was not being worn by the defendant at the time of the arrest is difficult to understand. It is also difficult to understand why the complaining witness did not testify that she had seen the face of the robber. Her testimony relating

to identification, other than the conclusion that she identified the defendant, was regarding the color of the jacket and the hat worn by the robber, and she was not positive as to the color of the jacket, although she positively testified that the color of the hat was brown. The defendant testified that he was wearing a green jacket and a black hat on the day of his arrest. Officer Muse, likewise, testified that the complaining witness identified him "according to his jacket." No testimony of any witness for the State was offered to show any facial characteristic of the defendant.

In People v. Jones, 24 Ill2d 71, 74, 179 NE2d 620, the court said:

> "The defendant argues that the identification of the defendant was based only upon the fact that he was wearing a light colored jacket and argues that this type of evidence is insufficient to establish defendant's guilt beyond a reasonable doubt. The identification by Young is subject to this criticism and if his testimony were the only identification testimony in the record, we would not hesitate to reverse the judgment of conviction. However, even if his testimony is disregarded, there remains the positive testimony of the complaining witness that she clearly saw the defendant's face at close range and that she recognized him by the freckles on his face, as well as his clothing."

As previously stated, the complaining witness in this case did not state that she saw the defendant's face, or that she recognized him by any other characteristic than the color of his jacket, about which she was not positive, and the color of his hat. There was no corroborating testimony on the question of identification and police officer Muse supported this testimony that the entire identification by the complaining witness was

based upon the color of the jacket, about which she was not positive. In her description given to the police Mrs. Land said nothing about the face of the man who robbed her. Mrs. Land testified that she was so nervous after the event that she could not check out the cash register to determine the amount that was taken, and after several unsuccessful attempts to find out how much money had been taken she waited four and one-half hours in order to arrive at the amount of $18 which was missing. It is entirely possible that she was so frightened at the time of the robbery that she watched only the pocket in which the robber's hand was holding some object.

The distance between the place of the robbery and the place of arrest is fifteen or sixteen blocks. The man who supposedly followed this defendant, and who has been described as the man customer and the son of Mrs. Land was never produced. He, according to the testimony of one of the police officers, advised them that his mother had just been robbed. The complaining witness described him as a customer. In view of the alibi offered by this defendant it would appear to have been incumbent upon the State to produce this witness. The defendant testified he had never been in the store. If this witness had followed the defendant from the cleaning shop for fifteen or sixteen blocks, the defendant's alibi would be worthless. The defendant and his mother testified that she had driven the defendant from his home to the place where he was arrested, and the defendant testified that he was arrested one minute after he had been dropped off by his mother, some fifteen or sixteen blocks away from the cleaning shop. This fact is undisputed by any testimony in the record other than that of the complaining witness, who identified this defendant only because of his jacket. Likewise, because the identification was based solely upon the jacket, and the hearsay testimony of Officer Joe Clark

426

relating to what the "man customer" or "son" told him, it is, to say the least, vague and uncertain. Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed. People v. Fiorita, 339 Ill 78, 170 NE 690; People v. Kidd, 410 Ill 271, 102 NE2d 141.

■ While the identification and whereabouts of the defendant at the time of the crime are questions for the jury, yet where from the entire record there is reasonable doubt as to the guilt of the accused a judgment of conviction cannot be permitted to stand. People v. Ricili, 400 Ill 309, 79 NE2d 509; People v. Gold, 361 Ill 23, 196 NE 729.

In People v. McGee, 21 Ill2d 440, 173 NE2d 434, the complaining witness identified the defendant from five or six men in a police lineup. On cross-examination the complaining witness stated that he had been shown a jacket after the lineup and admitted saying in a prior hearing that he was not positive as to the defendant's identification until he had seen the jacket. The jacket upon which he admittedly rested his identification was not introduced in evidence at the trial. The court on page 445 said:

> "Taken in conjunction with the uncontradicted evidence of an alibi, which is neither improbable nor such as taxes credulity, we are of the opinion there was not such positive identification here which fairly or reasonably supports the conviction."

■ In the instant case the jacket upon which identification is based was not introduced in evidence. The uncontradicted evidence of the alibi does not tax credulity. Because of the disparity in the amount of money taken and the amount of money found in the defendant's possession, the failure of the State to produce a witness who allegedly followed the perpetrator of the crime for some fifteen or sixteen blocks, and the failure

to produce any identification testimony of any witness who testified he or she had seen the face of the perpetrator of the crime, we conclude that there was not such positive identification which fairly or reasonably supports the conviction.

Judgment reversed.

SCHWARTZ and DEMPSEY, JJ., concur.