**People of the State of Illinois, Plaintiff-Appellee, v. Nevin William Thompson, Defendant-Appellant.**

Gen. No. 52,048.

First District, Fourth Division.

February 25, 1970.

 ██ 

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Fred Shandling and Theodore A. Gottfried, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, and Kenneth Gillis, Special Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant was convicted after a bench trial of the offense of rape. Judgment was entered and he was sentenced to a term of three to five years. Defendant raises two points on appeal: (1) he was not proven guilty beyond a reasonable doubt and (2) his pretrial confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.

Testimony of Ruby Grant, complaining witness:

She is married and lives at 7947 South Vernon. On January 27, 1965, she was employed as a supervisor at the Chicago Tile Company and worked from 3:00 p. m. to 11:00 p. m. After work she took a bus to 80th and South Park and walked east to Vernon. There are arc lights on each side of the street at 80th and Vernon.

As she began walking north on Vernon someone ran up behind her and grabbed her. She looked around to see who it was. The man told her to walk in front of him. She was led into a corner of the hallway in her

own building. She was told to bend over, and the man pulled up her coat and dress, pulled down her undergarments and proceeded to rape her.

After the man left she immediately ran upstairs and told her husband she had been raped and he called the police. She was taken to St. George's Hospital and examined.

Her eyes were covered during the attack. When she was in the hall she kept trying to look around and the man told her, "Lady, if you keep trying to look at me, I'm going to have to kill you." During the act the man asked her if he was hurting her. When he finished he said, "Come on, let's go around here." She started to cry and told him, "You better try to get away from here. If I'm not upstairs by 12:00 o'clock, my husband will come down looking for me." He stood there about a minute and then ran out the door. She never screamed.

On February 12, 1965, she saw the defendant at the Burnside Police Station. He was in a little room with two police officers.

On cross-examination she testified that she lives in a residential area. On 80th Street there is a laundromat, a grocery store and a restaurant open until 2:00 a. m. As she approached her home someone grabbed her from behind with both hands around her waist. She was very scared but did not scream. They walked into her hallway and over to the south corner. When she turned around on the street she looked up at the man and saw him for about ten seconds. She was not sure if she saw his eyes. He was holding her by the waist as they walked. She was blindfolded by her assailant in the hallway and prior to that he always walked behind her. Once in the corner of the hall she bent forward and was raped from the rear. Her assailant was standing in back of her during the entire attack. When she took off the blindfold the man had

165

gone. There were no marks or scars on his face. She did not know if he was clean shaven.

The man was dressed in a brown or beige, knee-length overcoat. He was five foot nine or ten and weighed about 165 pounds. He had on a gray, "stingy brim hat." He had a long nose and regular chin.

On February 12, 1965, a police officer called her at home and asked her to come to the police station. She went to the police station and into a room where the defendant was seated handcuffed to a chair. There were other police officers in the room. She also saw the defendant at the 11th Street Station when he was called out as being the defendant in this case and during the trial.

The police took her panties and the blindfold. The blindfold was a brown and white head scarf. She did not see the scarf again.

It was stipulated between the parties that the vaginal smears taken by the doctor at St. George's Hospital indicated the presence of male spermatozoa. The panties taken from the complaining witness also contained male spermatozoa. The vaginal area indicated no presence of bruises, abrasions or contusions.

Testimony of Ernest Grissett, called by the defense:

He is a detective with the Chicago Police Department. He has known the defendant for approximately eight years. He saw the defendant practically every day or evening during the winter of 1965. The defendant had domestic problems and he became very interested in the defendant. The defendant's reputation for truth and honesty was good. The defendant helped him identify people in the neighborhood.

Testimony of Yvonne Henry, called by the defense:

She is married and currently lives at 7920 South Wabash. She is the defendant's sister. The defendant has been living with her and her family since late 1964.

On January 27, 1965, she lived at 1040 East 80th Street. The defendant only owned two coats, a waist-length leather jacket and a brown, three-quarter length suede coat with white fur around the collar and a white fur lining. He never owned an overcoat. He only wore a black tam hat and a beanie cap. On weekdays he was usually home by 8:30 p. m. to do the cooking.

Testimony of Nevin William Thompson, defendant, in his own behalf:

He is eighteen years old. On January 27, 1965, he was living with his sister, Yvonne Henry. He never saw the complaining witness, nor did he ever attack her. He is about six foot one in height.

Opinion

Defendant contends that he was not proven guilty beyond a reasonable doubt. In People v. Betts, 101 Ill App2d 322, 326, 243 NE2d 282, the court stated:

> We recognize that positive identification by one witness who has sufficient opportunity for observation may be enough to support a conviction. People v. Burts, 13 Ill2d 36, 147 NE2d 281 (1958). However, "a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful, and uncertain. (Citations omitted.) And, where, as here, the identifying witnesses have never before observed the accused, the attendant circumstances, including the opportunity for definite identification, must be carefully weighed and considered." People v. Cullotta, 32 Ill2d 502, 504–505, 207 NE2d 444 (1965).

In the instant case during direct examination the complaining witness testified that as she was walking home someone ran up behind her, grabbed her by the waist and then she looked around to see who it was. She

167

then pointed out the defendant as this man. She further testified that in the hallway her eyes were covered but she kept trying to look around and the man told her that if she kept trying to look around he would kill her. She did not describe her assailant's height, weight or dress during direct examination.

On cross-examination she testified that her assailant grabbed her from behind and remained behind her throughout the attack. She was blindfolded by her assailant in the hall and the blindfold remained on during the entire encounter. She did not remove the blindfold until after the assailant had fled. When asked how long she looked at her assailant while in the street she stated that she was frightened and scared; that she turned around and looked at him "for about ten seconds"; that she is not sure if she saw his eyes and that she doesn't know what color his eyes were.

From the testimony of the complaining witness we believe that the circumstances surrounding the attack did not afford her a favorable opportunity for a clear and positive identification of the defendant as her assailant. Since the complaining witness lacked a sufficient opportunity to observe her assailant, and the State failed to introduce any other evidence connecting the defendant with the crime, we find that he was not proven guilty beyond a reasonable doubt.

As we have concluded that the evidence produced by the State did not support defendant's conviction of rape, it is unnecessary to discuss defendant's other contention.

The judgment is reversed.

Reversed.

ENGLISH and LEIGHTON, JJ., concur.