THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STANLEY KIRKMAN, Defendant-Appellant.

First District (5th Division)   No. 1—90—3685

Opinion filed January 22, 1993.—Rehearing denied February 18, 1993.

Rita A. Fry, Public Defender, of Chicago (Cheryl K. Lipton and Richard E. Gade, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Frank Cece, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendant Stanley Kirkman was found guilty of armed robbery and sentenced to 13 years in the Illinois Department of Corrections. He now appeals alleging that reversible error occurred due both to the admission of improper rebuttal testimony and the introduction of evidence concerning his gang affiliation. Defendant also contends that the sentence he received was excessive and that the award of restitution was in error. For the reasons which follow, we affirm the judgment of the trial court on all matters except the award of restitution.

At trial defendant's case consisted solely of his own testimony in which he denied any participation in the armed robbery with which he was charged. Although he admitted speaking with the detective and the State's Attorney, defendant denied making and signing the statement which the State's Attorney had prepared. Trial evidence adduced by the prosecution included defendant's sworn statement as well as the testimony of the arresting officer, the State's Attorney, and the alleged victim (Willie Randall). The substance of defendant's statement was substantially similar to the officer's testimony regarding his conversation with the defendant. In his statement defendant admitted that he got a handgun from his cousin for protection in walking through rival gang territory. He further stated that he and a friend (a codefendant who was tried separately) approached the 63-year-old Randall, who was parking his car, and asked him for directions. While Randall was replying, defendant pointed a gun at his head and ordered him out of the car. Then defendant took Randall's wallet, codefendant took his car

keys, and together they drove off in the victim's car. Randall's trial testimony corroborated the above sequence of events.

On appeal, defendant first contends that the trial judge erred in allowing the State to introduce as rebuttal evidence the complaining witness' testimony that he had conversations with Kirkman and his mother after the arrest. On cross-examination the prosecutor asked defendant if he and his mother had gone to the victim's house after defendant's arrest and if he and his mother had talked to the victim at the preliminary hearing which was held at the Belmont and Western police station. In response, defendant denied that he had gone to the victim's house, but stated that he did not know whether or not his mother had gone there. His exact testimony when asked about his mother's actions was, "I don't know. She didn't tell me nothing about that, but I didn't go." Similarly, defendant denied speaking with the victim at Belmont and Western (indicating that the police officer threatened to arrest him if he did) but noted that, "Maybe my mother did."

The objected to rebuttal testimony of the victim, Willie Randall, was as follows:

"Q. Sir, I want to direct your attention to a couple of days after the armed robbery. Did you have occasion to be visited by anyone?

A. Yes.

Q. And who was it that visited you?

A. Kirkman's mother

Q. Had you ever met this woman before?

A. No."

At this point defense attorney's objection to any further testimony about this visit was sustained. However, the prosecutor continued with further questions about the alleged conversations at Belmont and Western.

"Q. Mr. Randall, if I could direct your attention to approximately a week after the arrest, or when you at least testified at Belmont and Western. Do you recall that?

A. Yes, I do.

Q. That was in relation to a hearing with respect to the arrest of Stanley Kirkman?

A. That's correct.

Q. When you were at Belmont and Western, did anyone approach you?

A. I talked to him and his mother.

* * *

Q. Could you tell the ladies and gentlemen of the jury what the circumstances were, how this conversation came to be?

A. Well, his mother told me he was sick.

Q. Okay, where did this conversation take place?"

At this point, the defense attorney's objection was overruled, as the judge ruled that the conversation which was being offered into evidence was not being offered for the truth of the matter asserted. The prosecutor continued asking the witness questions regarding the substance of the alleged conversation.

"Q. Who was it that approached you specifically?

A. Well, I walked up to them. They were standing. They come in.

Q. All right.

A. The point is, I asked Kirkman, I said, what happened to my tire and tools in my car.

Q. Let's back up for one moment. What was contained within your car.

A. What was in my car?

Q. Yes, what items were in your car that were taken during the armed robbery?

A. I had a brand new spare, and I had about two hundred dollars worth of tools in the trunk.

Q. When you refer to a spare, you're talking about a spare tire?

A. Yes.

Q. And you asked the defendant what happened about that?

A. I asked him what happened.

* * *

Q. Did he indicate he was sorry at any time?

A. Yes, he did."

■■ ■ Illinois case law firmly establishes that the latitude to be allowed on cross-examination and rebuttal is a matter within the sound discretion of the trial court and a reviewing court should not interfere unless there has been a clear abuse of discretion resulting in a manifest prejudice to the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 269, 478 N.E.2d 267, 281.) Generally, any permissible kind of impeaching matter may be developed on cross-examination since one of the purposes of cross-examination is to test the credibility of the witnesses. (*People v. Columbo* (1983), 118 Ill. App.

3d 882, 966, 455 N.E.2d 733, 793.) However, the cross-examiner may not impeach a witness on a collateral matter, but must accept the witness' answer as final. (*People v. Thomas* (1991), 217 Ill. App. 3d 698, 702, 577 N.E.2d 831, 834.) The test to be applied in determining if a matter is collateral is whether the matter could be introduced for any purpose other than to contradict. (*Collins*, 106 Ill. 2d at 269, 478 N.E.2d at 281.) In the case at bar, defendant argues that any contact the defendant's mother may have had with the victim is immaterial because whether she went to the victim's house after the arrest and whether she told him that defendant was sick do not tend to prove that defendant committed the robbery.[1] Furthermore, defendant argues that the testimony regarding the conversation at Belmont and Western was collateral as the trial judge found that there was no value to this evidence other than its ability to contradict the defendant. Defendant also maintains that the conversation does not even contradict his previous testimony because he never testified about any post-arrest conversations he might have had with the victim, and in fact admitted that his mother might have gone to the victim's house and might have had a conversation with him. While we cannot agree with defendant's contention that the conversation testimony had no value other than to impeach (if a proper foundation had been laid, this conversation could have been admitted as a party admission), we do agree that both the testimony regarding the mother's visit and the conversation testimony went beyond the scope of proper rebuttal and its admission was error. However, because the evidence against the defendant was overwhelming, (positive identification by the victim as well as admissions to the State's Attorney and a signed statement), any error resulting from this admission was harmless.

Defendant also maintains that the trial court erred in denying his motion *in limine* to bar evidence of defendant's gang affiliation. He argues that his gang affiliation was not relevant as the robbery

---

[1]Defendant also argues (relying on *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387) that besides being improper rebuttal, this testimony was highly prejudicial, noting that evidence of a mother's actions after her son's arrest for a crime have been found to be highly prejudicial and reversible error because the only conceivable purpose for this testimony is to raise the highly prejudicial inference that the defendant's own mother believed him to be guilty of the crime charged. Although we agree with defendant that a mother's actions after the arrest of her son could be highly prejudicial (as they were in *Davis*, where the mother actually apologized for the son's behavior) the mere act of going to the victim's house or indicating that her son was sick does not rise to the level of reversible error.

was not gang related and, further, that even if the evidence was relevant it was highly prejudicial and should have been excluded. At trial the alleged damaging references were first introduced in defendant's signed handwritten confession to the police which he made shortly after his arrest. The prosecution made an offer of proof that the defendant signed a handwritten statement which indicated that he had obtained the gun that he used in the robbery from his cousin because he would be going through Vice Lord territory and that defendant was a Disciple. (This evidence was further mentioned in the arresting officer's testimony as well as in the prosecutor's cross-examination.) The prosecution additionally maintained that the evidence was not being offered to show defendant's propensity for bad acts, but to show the jury the circumstances of how defendant obtained the gun. The trial court denied defendant's motion, noting that the probative value of the offered evidence outweighed any prejudicial effect.[2]

■ It is the function of the trial court to weigh the probative value and prejudicial effect of evidence in determining whether it should be admitted. Evidentiary rulings of this nature will not be overturned on appeal unless a clear abuse of discretion is shown. (*People v. Shum* (1987), 117 Ill. 2d 317, 353, 512 N.E.2d 1183, 1195.) Further, a reviewing court will only reverse a trial court's grant or denial of a motion *in limine* if the trial court manifestly exceeded its discretion. (*People v. Downey* (1987), 162 Ill. App. 3d 322, 515 N.E.2d 362.) While it is well established that gangs are regarded with considerable disfavor, gang-related evidence will not necessarily be excluded if it is otherwise relevant and admissible. *People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207.

■ Without endorsing the proposition that the gang-related evidence showed defendant's motivation as established by the facts of this case, we nevertheless find that such evidence was relevant, as it indicated how defendant came to be in possession of the gun. Furthermore, such evidence appeared for the first time in defendant's own statement and was referred to by the State for impeachment purposes only. Under these circumstances, we cannot find that such evidence was more prejudicial than probative. Nor can we hold

---

[2]The trial judge also stated (although this issue was not raised by the State) that the evidence of gang affiliation showed defendant's motivation to participate in the alleged act.

that the trial judge abused his discretion by allowing the admission of the gang-related testimony.[3]

■ Defendant also contends that the trial court erred in sentencing him to 13 years' imprisonment because such sentence was excessive, "primarily punitive" and further that the trial judge improperly considered defendant's lack of remorse. The State maintains that the trial court properly considered all matters in aggravation and mitigation and also argued that 13 years' imprisonment is not excessive for armed robbery of an elderly victim.

A trial court's decision with regard to sentencing is entitled to great deference and weight. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Absent an abuse of discretion, a sentence may not be altered on review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

In the case at bar, the trial court listened to the factors in aggravation and mitigation. It considered defendant's age and his prior criminal record. It heard testimony regarding his personal background, employment, and educational and family background. Although defendant argues that the court improperly considered his lack of remorse, no authority is cited for this contention.

Finally, although defendant contends that the sentence is primarily punitive, a 13-year incarceration of a 19-year-old still leaves room for rehabilitation. Although defendant cites several cases in which other youthful defendants received lesser sentences for armed robbery (*People v. Ward* (1990), 194 Ill. App. 3d 229, 550 N.E.2d 1208; *People v. Carr* (1986), 149 Ill. App. 3d 918, 501 N.E.2d 241; *People v. Conley* (1983), 118 Ill. App. 3d 122, 454 N.E.2d 1107), this authority does not persuade us that the trial judge in the instant action abused his discretion in sentencing.

■ Both defendant and the prosecution maintain that the award of $450 in restitution was erroneous. This award was made by the trial court without any information on how to calculate the exact amount as required by statute (Ill. Rev. Stat. 1989, ch. 38,

---

[3]In a post-appeal motion to add additional authority, defendant cites to *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234, to support his position that the trial judge abused his discretion in refusing to redact references to defendant's gang affiliation from his confession. Even though the appellate court found that *Henderson* did involve an abuse of discretion in the trial court's refusal to redact portions of defendant's statement dealing with his intent to commit another murder, such abuse was determined harmless error because of the substantial nature of the evidence confirming defendant's guilt. This reasoning is completely in accord with our determination in the case at bar.

966

par. 1005—5—6). Accordingly, we find that the court was not authorized to make such an award and therefore vacate only this portion of the judgment.

Affirmed in part; vacated in part.

GORDON, P.J., and COUSINS, J., concur.